UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------x
MADISON WHO'S WHO OF EXECUTIVES
AND PROFESSIONALS THROUGHOUT THE
WORLD, INC.,

                    Plaintiff,

      -against-

SECURENET PAYMENT SYSTEMS, LLC
and MARC POTASH,

                  Defendants.
---------------------------------------------------x

MEMORANDUM AND ORDER
10-CV-364 (ILG)

GLASSER, United States Senior District Judge:

In this diversity action plaintiff Madison Who's Who of Executives and Professionals Throughout the World, Inc. ("Madison") alleges that defendant SecureNet Payment Systems, LLC and its President and Chief Executive Officer Mark Potash (collectively, "SecureNet") wrongfully withheld funds from Madison and wrongfully charged the credit cards of Madison's customers, causing Madison to suffer the loss of both its customers and its good reputation. Madison seeks damages in excess of $75,000 and declaratory and equitable relief. SecureNet now moves to dismiss the action pursuant to Fed.R.Civ.P. 12(b)(3) and (6) or, in the alternative, to transfer venue to the district court of the District of Maryland pursuant to 28 U.S.C. § 1404. As a second alternative, SecureNet moves for a stay pending arbitration pursuant to 9 U.S.C. § 3. For the reasons set forth below, SecureNet's motion to dismiss is GRANTED.

## BACKGROUND

The facts as set forth below are drawn from the complaint, the allegations of which the Court accepts as true, except where otherwise noted, solely for purposes of this motion to dismiss. Madison is a New York corporation in the business of "providing business-to-business and small business networking directories" to its customers. Complaint ¶ 1. SecureNet is a

1

Maryland corporation which provides credit card processing services for merchants. Id. ¶ 13. In September 2007, Madison entered into an agreement with SecureNet whereby SecureNet became the processor for credit card transactions between Madison and its customers. See id. Ex. A ("Merchant Agreement"). Three of the pages attached to the complaint as the Merchant Agreement contain the signatures of Madison's principals Matthew Schwartz or Scott Minuta. On the first of these signed pages (Ex. A at 2) the merchant is instructed to "Sign and attach the DISCLOSURE FORM provided with the TERMS AND CONDITIONS FOR MERCHANTS." Messrs. Schwartz's and Minuta's signatures appear on this page. On the last signed page (Ex. A at 6), the Agreement states in pertinent part:

> As the merchant you are responsible for ensuring that you stay compliant with cardholder data security and storage requirements, as well as maintaining fraud and chargebacks below thresholds. As the Merchant you are also responsible for reviewing and understanding the terms of your Merchant Agreement and following the guidelines set forth in your Merchant Operating Guide.
> . . .
> By signing below, I agree that I have received a copy of my Terms & Conditions for Merchants along with a copy of the Merchant Operating Guide, which is a part of your SecureNet Merchant Agreement. I agree to adhere to all of the guidelines outlined in the Terms & Conditions for Merchants and all of the transaction rules outlined in the Merchant Operating Guide.
> Should I have any questions regarding these documents and the information contained within I may contact my Sales Agent or I may contact SecureNet directly.

Id. Mr. Schwartz's signature appears directly below this excerpt.

The Terms & Conditions for Merchants ("Terms & Conditions") referenced above contains many additional provisions, the most directly applicable to the motions at hand being section 16.10 which contains choice of law and forum selection clauses stating in pertinent part:

> This Agreement will be governed by and construed in accordance with the laws of the State of Maryland without reference to conflict of law provisions. Any action, proceeding, arbitration, or mediation relating to or arising from this Agreement must be brought, held or otherwise occur in the federal judicial district that includes Montgomery County, Rockville, Maryland.

Defendants' Motion to Dismiss, or in the Alternative to Transfer or Stay Proceedings ("Mot."), Ex. 1 at 10.[1]

In August 2009, a dispute arose with respect to SecureNet's processing of certain credit card transactions authorized by Madison's customers. SecureNet had charged the customers' credit cards for purchases of Madison's goods and services, but SecureNet did not subsequently turn these charged amounts over to Madison. Compl. ¶¶ 22-23. In addition, SecureNet removed $19,776.30 from Madison's bank account. Id. SecureNet's explanation for these actions was that it was establishing a "reserve account" composed of $106,000 of Madison's assets in the event that one of Madison's customers initiated a "chargeback."[2] Id. ¶ 25. Madison alleges that, without access to this $106,000, it could not fulfill its customers' orders and was forced to refund $104,425 in customer purchases. Id. ¶¶ 31-32.

Madison then informed SecureNet of its intention to terminate the Merchant Agreement. Id. ¶¶ 33-34. In response, SecureNet threatened to impose a $360,000 termination fee and began charging Madison's clients' credit cards for goods and services even though Madison had already informed SecureNet that these transactions had been cancelled and refunded. Id. ¶¶ 37-38. Madison alleges that, because these charges appeared in Madison's name on its clients' credit card statements, it appeared to them that they were being inappropriately charged by Madison. Id. ¶ 40. As a result of these charges, Madison claims that it has lost approximately 209 clients, approximately $1,705,770.22 in present and future sales as well as damages to its name, reputation and goodwill. Id. ¶¶ 41-47. The complaint pleads causes of action for (1) fraud; (2) conversion, civil theft and misappropriation; (3) unjust enrichment; (4) constructive trust; (5)

---

[1] While the Court is normally confined to factual matter contained in or attached to the complaint, in this case the Court finds it appropriate to consider the Terms & Conditions included in SecureNet's motion. See infra at 6-7.

[2] According to the Terms & Conditions a chargeback is "a reversal of a Card sale [the merchant] previously presented. . . ." Terms & Conditions § 17.5.

money had and received; (6) breach of fiduciary duty; (7) tortious interference with contract; (8) tortious interference with business relations; and (9) violation of New York State General Business Law § 349.

SecureNet now moves the Court to dismiss this action based upon the forum selection clause ("FSC") contained in § 16.10 of the Terms & Conditions. In the alternative, SecureNet seeks a transfer of venue (also pursuant to the FSC) to the United States District Court for the District of Maryland and, as a second alternative, a stay pending arbitration. SecureNet has already initiated an arbitration under the Merchant Agreement before the National Arbitration Forum. Mot. Ex. 2.

## DISCUSSION

To determine the appropriate resolution of the motions before the Court it must answer three questions. First, whether the Terms & Conditions and the provisions contained therein are part of the agreement that exists between Madison and SecureNet and, if so, whether the FSC contained in those Terms & Conditions applies to this action. If the answer to these two questions is yes, then the Court must decide whether to dismiss the action so that it may be brought in an appropriate forum pursuant to the Merchant Agreement or to transfer the action to the federal district court in Maryland. The Court answers each of these questions seriatim.

As an initial matter, Madison contends that the Court may not consider the Terms & Conditions at all in resolving these motions because it did not include them in its complaint. The Court disagrees. It is true that on a motion to dismiss the Court's attention is confined to the complaint. However, the complaint "is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Int'l Audiotext Network, Inc. v. American Tel. and Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)). As discussed more fully infra the multiple references to the Terms & Conditions in the portions of the Merchant Agreement

attached to the complaint are more than sufficient in this case to incorporate by reference the former into the latter.

## I.     <u>Whether the FSC Is Part of the Agreement Between the Parties</u>

Madison repeatedly presses the argument that it cannot be bound by the FSC in the Terms & Conditions because that document is not a part of its agreement with SecureNet. Madison alleges that it never received a copy of the Terms & Conditions and that, accordingly, the agreement consists only of the signed pages Madison attached to the Complaint and "no terms, conditions or other documents were part of the contract between Plaintiff and Defendants." Opp. at 5.

This argument ignores the fundamental precept of contract law that documents may be incorporated by reference into an executed agreement. See <u>PaineWebber Inc. v. Bybyk</u>, 81 F.3d 1193, 1201 (2d Cir. 1996) ("a paper referred to in a written instrument and sufficiently described may be made a part of the instrument as if incorporated into the body of it") (quoting <u>Jones v. Cunard S.S. Co.</u>, 238 A.D. 172, 173 (2d Dep't 1933) (New York law); <u>Housing Authority for Prince George's County v. Williams</u>, 784 A.2d 621, 625 (Md. App. 2001) ("It is a long recognized rule that where a writing refers to another document, that other document is to be interpreted as part of the writing.") (quoting <u>Wheaton Triangle Lanes, Inc. v. Rinaldi</u>, 204 A.2d 537, 540 (Md. 1964)) (Maryland law).

Here, it is apparent that the Terms & Conditions were incorporated by reference into the Merchant Agreement. There are two references to the Terms & Conditions in the signed pages that Madison attached to the complaint. On the second page of Exhibit A of the complaint, just inches below the signatures of Messrs. Schwartz and Minuta, appear the words: "Sign and attach the DISCLOSURE FORM provided with the TERMS AND CONDITIONS FOR MERCHANTS." On the last page of that exhibit, Mr. Schwartz's signature appears below language stating that, by that signature, he agreed that he had received a copy of the Terms & Conditions and that he

would adhere to all of the guidelines outlined therein. Accordingly, the Terms & Conditions were incorporated by reference into the Merchant Agreement and thereby became a part of that agreement.

The facts here are distinguishable from Martin v. Citibank, N.A., 64 A.D.3d 477 (1st Dep't 2009), upon which Madison relies. The issue in Martin was whether there was a triable issue of fact as to whether the plaintiff received prior to execution one page of a multi-page lease. Unlike the facts of this case, the plaintiff steadfastly maintained that he had not received the page. In contrast, Madison explicitly agreed when it signed the Merchant Agreement that it had received the Terms & Conditions and would abide by its provisions.[3]

In Generale Bank, New York Branch v. Wassel, 779 F.Supp. 310 (S.D.N.Y. 1991), Judge Leisure of the Southern District of New York remarked upon the recurring problem in the courts "of people seeking to avoid the legal impact of their signatures." He quoted an old decision of the New York Court of Appeals:

> Ordinarily, the signer of a deed or other instrument, expressive of a jural act, is conclusively bound thereby. That his mind never gave assent to the terms expressed is not material. If the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case, the writing binds him . . . .

Id. at 315 (quoting Pimpinello v. Swift & Co., 253 N.Y. 159 (1930)) (citations omitted in original). Madison cannot avoid the natural consequences of its signature on the Merchant Agreement affirming that it had received the Terms & Conditions and agreeing to adhere to it.[4]

---

[3] Madison's citation to Kargo, Inc. v. Pegaso PCS, S.A. de C.V., No. 05 Civ. 10528, 2007 WL 1490124 (S.D.N.Y.May 21, 2007) in support of allowing discovery on this issue is unavailing. That case appears to have involved attempts by Magistrate Judge Eaton of the Southern District of New York to resolve a complicated discovery issue in a case where discovery was already in progress. The only document necessary to the resolution of the present motions is the Merchant Agreement attached to the complaint in which Madison by its signature agreed that it had received the Terms & Conditions and would abide by its terms.

[4] To the extent that the complaint alleges that Madison never received the Terms & Conditions, see Compl. ¶¶ 5, 19-21, 92, the Court need not accept as true "those allegations that are contradicted by the documents" attached to the complaint. Fowlkes v. Rodriguez, 584 F. Supp.

Immediately above Mr. Schwartz's signature the Merchant Agreement advised the merchant that it could either contact a sales agent or SecureNet directly if it had any questions about the Terms & Conditions. If Madison agreed to abide by this document without first securing a copy of it for review or even contacting SecureNet for any information then such an omission of due diligence was negligent and will not relieve Madison of its obligations under the agreement. The Court finds that the Terms & Conditions, including the FSC therein, are a part of the agreement between the parties.

## II. Whether the FSC is Applicable to this Action

By its terms, the FSC in this case encompasses "[a]ny action, proceeding, arbitration, or mediation relating to or arising from this Agreement" and, as to those proceedings, requires a forum "in the federal judicial district that includes Montgomery County, Rockville, Maryland." The Court has little difficulty in concluding that this action both relates to and arises from the Merchant Agreement. It is sufficient merely to point out that Madison attached the Merchant Agreement to its complaint and that agreement forms the sole basis for a legal relationship between the parties with respect to the transactions complained of. Madison's attempt to avoid operation of the FSC simply by omitting a cause of action sounding in breach of contract is futile. The Second Circuit has previously rejected a claim that "only allegations of contractual violations fall within the scope of" forum selection clauses similar to the FSC contained in the Merchant Agreement. See Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993). Accordingly, the FSC in the Merchant Agreement applies to this action.

---

2d 561, 574 (E.D.N.Y. 2008); Lin v. Interactive Brokers Group, Inc., 574 F. Supp. 2d 408, 416 (S.D.N.Y. 2008); Steinberg v. PRT Group, Inc., 88 F. Supp. 2d 294, 300 (S.D.N.Y. 2000). Madison's signature directly underneath language affirming that it had received and would abide by the Terms & Conditions plainly contradicts the allegations of the complaint suggesting otherwise.

### III. Whether the Court Should Dismiss this Action or Transfer it to the District of Maryland

Having found that the FSC is valid and applies to this action, the Court must determine the appropriate procedure for its enforcement. SecureNet asks for dismissal in the first instance and for a transfer of venue as an alternative remedy. "The court must weigh in each case whether dismissal or transfer is the most efficient and just means of enforcing" a forum selection clause. Licensed Practical Nurses, Technicians and Health Care Workers of N. Y., Inc. v. Ulysses Cruises, Inc., 131 F.Supp.2d 393, 409 (S.D.N.Y. 2000).

The Court finds that under the circumstances of this case dismissal is the appropriate remedy. SecureNet has already filed an arbitration proceeding against Madison asserting claims for breach of the Merchant Agreement. Madison may prefer to litigate its claims against SecureNet as counterclaims in that proceeding or it may choose to re-file this action in the federal judicial district of Maryland pursuant to the FSC. The Court will not presume to select a proper forum for Madison; it is enough for present purposes that the Court finds that this forum is an improper one. Accordingly, SecureNet's motion to dismiss is granted.

### CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
May 24, 2010

/s/
I. Leo Glasser
United States Senior District Judge

**Copies of the foregoing memorandum and order were electronically sent to:**

<u>Counsel for the Plaintiff</u>
Jonathan C. Uretsky
Phillipson & Uretsky, LLP
111 Broadway, 8th Floor
New York, NY 10006

<u>Counsel for the Defendant</u>
James Patrick Gillece
Whiteford Taylor & Preston LLP
Seven St. Paul Street
Baltimore, MD 21202